IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON PATRICK KOLLOCK | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| STEVEN GLUNT, et al. | : | NO.  13-0656 |

**REPORT AND RECOMMENDATION**

ELIZABETH T. HEY, U.S.M.J. January 23, 2014

This is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C.

§ 2254, by Jason Patrick Kollock ("Kollock" or "Petitioner"), who is currently

incarcerated at the State Correctional Institution in Houtzdale, Pennsylvania.  For the

reasons that follow, I recommend that the petition be denied.

**I.     FACTS AND PROCEDURAL HISTORY**

On December 13, 2006, Petitioner was arrested for the alleged sexual assault of

his 7-year old stepdaughter L.W. between September 2005 and December 2005, at the

family residence in Fairless Hills, Pennsylvania.  Authorities charged Petitioner with

involuntary deviate sexual intercourse ("IDSI") with a person who is less than 13 years of

age, unlawful restraint (with risk of serious bodily injury), false imprisonment,

endangering the welfare of a child, incident assault, corruption of minors, and statutory

sexual assault.  Commonwealth v. Kollock, No. 7646 of 2006, at 2 (Bucks C.C.P. Jan. 17,

2008) ("Trial Ct. Op.").  The trial court summarized the trial evidence as follows:

> [L.W.], then age 7, testified that at the time of the
> offenses she attended second grade . . . and lived with her
> mother, Katie Kollock, her stepfather, Jason Kollock, her two
> sisters (biological children of Katie Kollock and Jason

Kollock), and her stepsister, Leah (Jason Kollock's biological daughter from another relationship).

[L.W.] . . . described how she was often requested to "rub" [Petitioner's] feet and head while he was laying down on the sofa.  [L.W.] testified that her sisters would "have to go outside and play by themselves" while she was kept inside by [Petitioner] and made to rub his body for a period of time that she . . . estimated to be longer "than an episode of SpongeBob SquarePants."  [L.W.] testified that on several occasions, while [Petitioner] lay on the sofa with his feet on her lap, and while her mother was at work and no one else was inside the home, she was required to suck all of his (Kollock's) toes.

[L.W.] then described an occasion when [Petitioner] brought "handcuffs and a blindfold" into the family room and put the handcuffs "on my hands and handcuffed me behind my back."  [L.W.] stated that the handcuffs "felt a little tight" and "didn't feel good."  She related that [Petitioner] then "blindfolded my eyes" and said that "I was going to suck his toes," but "[t]hen I was – I wasn't sucking his toes."  She states unequivocally that the item was "bigger than his toes" and it "was skin."  [L.W.] testified that the item was placed all the way "[i]nto . . . the back of my neck."  She affirmatively responded that the "skin" object "filled up her whole mouth."  She described the item's shape as "a line" that was "straight," and when it hit the back of her throat she stated, "I started kicking and I kicked the end table over."

[L.W.] testified that after she kicked the table, [Petitioner] removed the handcuffs and blindfold and then said, "'Do you want to eat dinner' and we ate dinner."

[L.W.] testified that when she was "bad," [Petitioner] would make her stand in a corner and "put my arms straight out like an airplane."  On one such occasion, when her sisters were again outside and her mother was not present, [Petitioner] made her "put my shirt over my head" and expose her chest.

[L.W.] further testified that [Petitioner] would "tackle" her and wrestle with her, which "hurt."  Kollock also "pulled on" and "ripped" her underwear.  [L.W.] stated that [Petitioner] did not wrestle with her other sisters or "pull" on their underwear.

Patricia Vommoro, a licensed professional counselor . . . testified that . . . during the 2005-2006 school year, [L.W.] came to Vommoro's office and "told me that her stepfather had her suck his toes on different occasions, and on one occasion he put some sort of blindfold on her eyes and handcuffed her hands behind her back and . . . had her suck his toes, and at one point it wasn't his toes that she thought she was sucking on." Vommoro testified that [L.W.] was "very nervous, had a lump in her throat, [and was] extremely emotional, and it took some time to be able to share each piece of information." After this interview, Vommoro contacted Bucks County Children and Youth. Vommoro also testified that teachers from the Pennsbury School District had been on strike during the month of October 2005 when the offenses occurred, and as a result, [L.W.] did not attend school during that month.

Leah Kollock, [L.W.'s] seven (7) year old stepsister and [Petitioner's] daughter, testified that on several occasions she went outside to play with her stepsisters, Jennie and Elizabeth, while [L.W.] stayed inside the home with [Petitioner]. Leah testified that when she came inside "a couple of times to go to the bathroom" she witnesses [L.W.] on the couch with [Petitioner], rubbing his head and touching his feet. Leah also witnessed [Petitioner] wrestle with [L.W.], and during one such encounter [Petitioner] "broke" [L.W.'s] underpants which made [L.W.] cry. Leah testified that [L.W.] confided to her that [Petitioner] had tied "her hand behind her back and she has a blindfold over her eyes, and she was to suck his toe but she sucked something else." Leah stated that [Petitioner] was "rough" with [L.W.] when they wrestled; that [Petitioner] once "cracked" [L.W.'s] back which made [L.W.] cry, and that [Petitioner] punished [L.W.] more than the other children. Leah testified that [Petitioner] ordered [L.W.] to hold "weights" when she was made to hold her arms out.

Christina Martin, [L.W.'s] 26 year-old stepmother, testified that she lives with her husband, Keith Martin ([L.W.'s] biological father), and their daughters, Danielle and Terry Lynn. She testified that in the late Summer, 2005 "[L.W.] told me that [Petitioner] would ask her repeatedly to give him body massages. Usually he would be in his boxer shorts and the other children would be sent outside while this was going on." Christina further testified that in September of

3

2005, [L.W.] had "told me that [Petitioner] has asked her to suck his toes," and "that he forced her to suck each toe individually." Christina described [L.W.] as ". . . very fidgety and crying and she would not make eye contact with me at all." Mrs. Martin testified that when "I asked her ([L.W.]) why she didn't say 'no,' she told me that [Petitioner] had told her that he would do something bad to her if she didn't do what he asked."

[R.W.], [L.W.'s] 21 year-old aunt, testified that in mid-December, 2005, she attempted to get [L.W.] to spontaneously smile for a photograph for a school project by prompting her with the presumably humorous question "Does Daddy have stinky feet?" Rather than smiling or laughing, [L.W.] responded by stating that "Daddy Jason makes me suck his toes." [The aunt] also testified that on another occasion in April or May of 2006, when she was babysitting for [L.W.] and her stepsisters, she asked L.W. to "scratch my back," but "[s]he ([L.W.]) said no, she didn't want to because 'Daddy Jason makes me do it all the time with his shirt off.'"

Kim DeGroff, a Child Protective Service Caseworker with Bucks County Children & Youth Services, testified that after receiving this referral, she immediately contacted Patricia Vommoro . . . . DeGroff testified that [L.W.] told her that she knew "why I (DGroff) was there to speak with her" and . . . that "it was because her stepfather, [Petitioner], made her suck his toes." When DeGroff "asked [L.W.] to tell me more about it," [L.W.] "said that he has her suck his toes and she didn't know how many times; she could not even guesstimate how many times." DeGroff testified that [L.W.] said that "one time he (Kollock) had her suck something else, and she was very upset at this time talking about this. . . . She thought it was his penis. . . . She said she thought he was standing in front of her on something, and he put something in her mouth, and she said she thought it was his penis but she said she didn't know for sure because she was blindfolded."

In addition, [L.W.] stated that "she thought his penis was in the back of her throat . . . she could feel it in the back of her throat moving back and forth and she tasted something like blood." [L.W.] said "it didn't taste like feet, because he had made her suck on his toes before." When DeGroff asked if [Petitioner] said anything to her after the incident, [L.W.] said "he told her not to tell anyone or else he would beat her up."

4

DeGroff testified that she re-interviewed [L.W.] two days later on June 21, 2006, with Patricia Vommoro and a Detective present, at which time [L.W.] repeated her narrative from her previous interview.

Detective Joseph Coffman of the Falls Township . . . Police Department testified that during his interview with [L.W.] on June 21, 2006 . . . [L.W.] was "very hesitant, stand-offish," and "extremely" nervous. [L.W.] related that she had had to suck [Petitioner's] toes while on "the couch of their living room." [L.W.] further related to Detective Coffman that [Petitioner] had "blindfolded her and handcuffed her behind her back," and she believed that [Petitioner] had stuck his "privates" in her mouth. After the interview Detective Coffman followed [L.W.'s] mother, Katie, to her home and retrieved a pair of silver handcuffs from the Kollock bedroom.

Detective Coffman arranged for [Petitioner] to voluntarily come to the Falls Township Police Department where [Petitioner] stated to Coffman that [L.W.] was a "very good kid" and was not known to lie. According to Detective Coffman, [Petitioner] stated that he first learned of [L.W.'s] allegations from his wife, Katie Kollock. [Petitioner] related that his wife "had informed him of the allegations, including him having [L.W.] rub his head, his back, and in his words, 'sticking his junk in her mouth.'" [Petitioner] then suggested that [L.W.'s] allegations were the result of a dispute that occurred at an air show and an earlier disciplinary action by [Petitioner] against [L.W.]. [Petitioner] denied punishing [L.W.] by having her hold her arms out to the side, or with her shirt pulled over her head, and stated that he would not use that form of punishment because his father had done that to him. [Petitioner] also denied having [L.W.] suck his toes, and stated that "only the chiropractor massages his (Kollock's) feet." When Detective Coffman asked if he had ever stuck his penis into [L.W.'s] mouth, [Petitioner] replied: "I married Katie." Coffman asked [Petitioner] if he understood the question and repeated it. [Petitioner] gave the same response, ("I married Katie"), and then added: "We didn't raise our kids like that."

At trial [Petitioner] testified in his own behalf. He stated that . . . he had been employed as a security guard for the Neshaminy Mall and had been issued a pair of Smith and

> Wesson handcuffs.  [Petitioner] admitted that he had spanked and yelled at [L.W.] and made her stand in the corner when he disciplined her.  He testified that "I was too hard on her."
>
>         * * * *
>
>     [Petitioner] described his relationship with [L.W.] "as though I was . . . her father because I was in the picture longer than her biological father" and asserted that [L.W.] would rub his head and scratch his back "infrequently."  He denied that [L.W.] ever massaged his feet or sucked his toes, and he denied punishing [L.W.] by making her stand with her arms out to her sides.
>
>     . . . .  [Petitioner] acknowledged speaking with four other people prior to meeting with Detective Coffman, and admitted that "when asked point blank about the allegations," he asserted that "I married Katie."  When asked why he said that, [Petitioner] responded "[t]hat was my way of telling him that my loyalty's to my wife."

Trial Ct. Op. at 2-8 (record citations omitted).

Following a jury trial before the Honorable Alan M. Rubenstein of the Court of Common Pleas of Bucks County, Petitioner was convicted of IDSI with a person who is less than 13 years of age, false imprisonment, endangering the welfare of a child, and indecent assault.  On June 25, 2007, Judge Rubenstein sentenced Petitioner to serve an aggregate term of 13-to-27 years in prison.  See N.T. 06/27/07 at 43-44.[1]

Following the denial of post-sentence motions, Petitioner filed a timely appeal to the Pennsylvania Superior Court arguing that the evidence was insufficient to support his convictions for IDSI and indecent assault, that the trial court imposed an unreasonable and excessive sentence, and that the trial court erred in precluding evidence that

---

[1] Specifically, the trial court sentenced Petitioner to consecutive prison terms of 10-to-20 years for IDSI with a person who is less than 13 years of age, 2-to-5 years for false imprisonment, and 1-to-3 years for endangering the welfare of children.  See N.T. 06/27/07 at 43-44.  The indecent assault charge merged with the IDSI charge.

Petitioner had passed a polygraph test.  See Commonwealth v. Kollock, 2025 EDA 2007, at 6 (Pa. Super. Aug. 8, 2008) ("Super. Ct. Direct Op.").  On August 8, 2008, the Superior Court affirmed the judgment of sentence.  See id. at 13.  Petitioner filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on January 14, 2009.  See Commonwealth v. Kollock, 564 MAL 2008, 963 A.2d 468 (Pa. 2009).  Petitioner did not file a petition for writ of certiorari to the United States Supreme Court.

On May 1, 2009, Petitioner filed a pro se petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9551, raising several claims of ineffectiveness of counsel, as well as claiming insufficient evidence to support his convictions, police prejudice against Petitioner, an illegal sentence, and trial court error in precluding evidence that Petitioner had passed a polygraph test.  See Commonwealth v. Kollock, No. 7646 of 2006, at 3-4 (Bucks C.C.P. Sept. 9, 2011) ("PCRA Ct. Op.").  The PCRA Court appointed counsel and on July 10, 2009, appointed counsel filed a Finley letter[2] asking to withdraw from the case.  By Order dated July 24, 2009, the PCRA Court granted counsel's petition to withdraw.  Petitioner filed an interlocutory appeal to the Superior Court, which was subsequently quashed.  See id. at 5-6.

---

[2]Pursuant to Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988), appointed counsel in a post-conviction proceeding may be given leave to withdraw upon the submission of a "no merit" letter that details the nature and extent of his review of the cases, lists each issue the petitioner wished to have reviewed, and explains his assessment that the case lacks merit.  The court must also conduct an independent review of the record and must agree with counsel that the petition is meritless before dismissing the petition.

Petitioner, acting pro se, filed an amended PCRA petition on May 4, 2010, and a "Supplemental Amendment" on December 13, 2010, reiterating claims previously raised and/or raising additional claims.  The PCRA Court held a hearing on February 25, 2011, during which Petitioner unsuccessfully moved to have Judge Rubenstein recuse himself on grounds of bias.  N.T. 02/25/11 at 6-8.  During the hearing, Petitioner identified and/or pursued five claims of ineffective assistance of counsel, namely (1) failing to call the victim's uncle as a witness, (2) failing to introduce a "psychological evaluation" of Petitioner performed by Dr. Jay Skolnick, (3) failing to give Petitioner the opportunity to review the pre-sentence investigative report, (4) failing to move to suppress Petitioner's police statements, and (5) failing to introduce that Ms. VonWatzdorf was not a doctor.[3] On April 12, 2011, the PCRA Court denied Petitioner's PCRA petition.  See Commonwealth v. Kollock, CP-09-CR-0007646-2006, Docket (Bucks C.C.P. Apr. 12, 2011); PCRA Ct. Op. at 11.

Petitioner appealed the denial of PCRA relief to the Pennsylvania Superior Court raising the following claims:

1.      Abuse of discretion by the PCRA Court judge in not recusing himself.

2.      Ineffectiveness of trial counsel for:

a.  Failing to conduct any meaningful investigation;

b.  Failing to introduce a "psychological evaluation" of Petitioner performed by Dr. Skolnick;

---

[3] Ms. DeGroff of Children & Youth Services testified that "Dr. Bea Vonwatzdorf" was "our forensic interviewer."   N.T. 01/30/07 at 167, 173.

    c.  Failing to object to inconsistent testimony by Commonwealth witnesses;

    d.  Failing to object to Commonwealth witnesses being coached;

    e.  Failing to object to the Commonwealth's vouching for the credibility of Commonwealth witnesses during closing arguments;

    f.  Failing to give Petitioner the opportunity to review the pre-sentence investigative report;

    g.  Failing to object to the Commonwealth knowingly withholding information related to the search warrant;

    h.  Failing to object to Detective Coffman's lack of experience in investigating child sexual abuse cases;

    i.  Failing to call the victim's uncle as a witness;

    j.  Failing to object to the Child & Youth Services practice of asking leading questions in their investigations;

    k.  Failing to object to hearsay testimony of Commonwealth witnesses;

    l.  Failing to object to the trial judge's prejudicial statements during the sentencing hearing; and

    m.  Failing to object to the unreasonableness of the sentence.

3.    Ineffectiveness of direct appellate counsel for failing to present the aforementioned claims of ineffectiveness of trial counsel.

See Commonwealth v. Kollock, 1164 EDA 2011, 11-12 (Pa. Super. May 31, 2012)

("Super. Ct. PCRA Op.").  On May 31, 2012, the Superior Court affirmed the denial of

PCRA relief.  See id. at 27.  Petitioner did not file a petition for allowance of appeal to

the Pennsylvania Supreme Court.

On January 25, 2013,[4] Petitioner filed this pro se petition for habeas corpus,

raising ten Grounds for relief:

> 1.    Insufficient evidence to sustain his convictions for IDSI and indecent assault;
>
> 2.    Unreasonable and excessive sentence;
>
> 3.    Abuse of discretion by the PCRA Court judge in not recusing himself;
>
> 4.    Ineffectiveness of trial counsel for failing to conduct a meaningful independent investigation;
>
> 5.    Ineffectiveness of trial counsel for failing to call Dr. Skolnick and the victim's uncle as witnesses;
>
> 6.    Ineffectiveness of trial counsel for failing to object to inconsistent statements made by Commonwealth witnesses who were coached;
>
> 7.    Ineffectiveness of trial counsel for failing to object to the Commonwealth's vouching for the credibility of Commonwealth witnesses during closing arguments;

---

[4] The petition was docketed on February 5, 2013.  However, the federal court employs the "mailbox rule," deeming the petition filed when given to prison authorities for mailing.  Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)).  Because the original petition is dated January 25, 2013, see Doc. 1 at 48 (ECF pagination), I will assume that he gave the petition to prison authorities for mailing on that date.

8.      Ineffectiveness of trial counsel for failing to give
        Petitioner the opportunity to review the pre-sentence
        investigative report;

9.      Ineffectiveness of trial counsel for failing to object to
        the unreasonableness of the sentence; and

10.     The trial court judge attempted to hide his
        unreasonable and excessive sentence from the
        Sentencing Commission.

See Doc. 1.  Petitioner filed a supporting memorandum with his petition.  See Doc. 1-1.

On April 12, 2013, the District Attorney filed a response arguing that Petitioner is not

entitled to relief.  See Doc. 8.  On June 5, 2013, Petitioner filed a reply ("rebuttal") in

support of his petition.  See Doc. 14.  The Honorable Paul S. Diamond originally

assigned this matter to the Honorable L. Felipe Restrepo for a Report and

Recommendation, but on June 28, 2013, following Judge Restrepo's appointment to the

District Court bench, Judge Diamond reassigned it to me for a Report and

Recommendation.  See Docs. 2 & 15.  The case is ripe for review.[5]

---

[5]The petition is timely filed.  Petitioner's conviction became final on April 14,
2009, when the time for filing a certiorari petition in his direct appeal expired.  See 42 Pa.
C.S.A. § 9545(b)(3) ("a judgment becomes final at the conclusion of direct review,
including discretionary review in the Supreme Court of the United States . . . or at the
expiration of time for seeking the review.").  Petitioner filed his PCRA petition on May 1,
2009, only 17 days after the AEDPA limitations period began to run, and the federal
limitations period tolled until June 30, 2012, thirty days after the Pennsylvania Superior
Court affirmed the denial of his PCRA petition.  See Harris v. Vaughn, 129 Fed. Appx.
684, 685 (3d Cir. 2005) (where petitioner did not file an allocator petition in the
Pennsylvania Supreme Court, his judgment became final thirty days after the Superior
Court affirmed conviction).  Therefore, at the conclusion of Petitioner's PCRA appeal, he
had 348 days remaining, or until June 13, 2013, to file a timely habeas petition.  This
petition, filed on January 25, 2013, is therefore timely.

## II.   LEGAL STANDARDS

### A.   Exhaustion and Procedural Default

Before the federal court can consider the merits of a habeas claim, the petitioner must comply with the exhaustion requirement of section 2254(b).  Exhaustion requires a petitioner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  In addition, federal constitutional claims must be fairly presented to the state courts, meaning that the petitioner must present the same factual and legal basis for the claim to the state court to put the state court "on notice that a federal claim is being asserted."  McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).

The doctrine of procedural default is closely related to the exhaustion requirement. It is not enough that the petitioner present his claims to the state court.  He must also comply with the state's procedural rules in presenting his claims, thereby giving the state courts a full and fair opportunity to address them.  A failure to do so results in a procedural default.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).

> [A] state prisoner's habeas claims may not be entertained by a federal court "when (1) 'a state court has declined to address those claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.'" Walker v. Martin, 562 U.S. __, __, 131 S. Ct. 1120, 1127 (2011) (quoting Coleman, 501 U.S. at 729-30).

Maples v. Thomas, __ U.S.__, 132 S. Ct. 912, 922 (2012).  A decision based on a state procedural rule is considered independent if it does not rely on the merits of the federal

claim or rest primarily on federal grounds.  Harris v. Reed, 489 U.S. 255, 260 (1989); see also Ake v. Oklahoma, 470 U.S. 68, 75 (1985).  "[A] state procedural ground is not 'adequate' unless the procedural rule is 'strictly or regularly followed,'" Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and the rule "speaks in unmistakable terms." Doctor v. Walters, 96 F.3d 675, 683 (3d Cir. 1996), abrogated on other grounds by Beard v. Kindler, 558 U.S. 53 (2009).  Thus, the procedural disposition must comport with similar decisions in other cases such that there is a firmly established rule that is applied in a consistent and regular manner "in the vast majority of cases."  Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997) (quoting Dugger v. Adams, 489 U.S. 401, 410 n.6 (1989)).

If a claim is found defaulted, the federal court may address it only if the petitioner establishes either (1) cause for the default and prejudice resulting therefrom, or (2) that a failure to consider the claim will result in a fundamental miscarriage of justice.  Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).  To meet the "cause" requirement to excuse a procedural default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Id. at 192-93 (quoting and citing Murray v. Carrier, 477 U.S. 478, 488-89 (1986)).  To establish prejudice, the petitioner must prove "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Id. at 193.

In order for a petitioner to satisfy the fundamental miscarriage of justice exception to the rule of procedural default, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually

13

innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995) (quoting <u>Carrier</u>, 477 U.S. at 496). This requires that the petitioner supplement his claim with "a colorable showing of factual innocence." <u>McCleskey v. Zant</u>, 499 U.S. 467, 495 (1991) (citing <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454 (1986). In other words, a petitioner must present new, reliable evidence of factual innocence. <u>Schlup</u>, 513 U.S. at 324.

**B.    Merits Review**

Once the petitioner has overcome the procedural hurdles of exhaustion and procedural default, the federal courts' habeas review is limited in nature. The Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective on April 24, 1996, amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254. <u>Werts</u>, 228 F.3d at 195. The AEDPA increased the deference federal courts must give to the factual findings and legal determinations of the state courts. <u>Id.</u> at 196 (citing <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir. 1996)). Pursuant to 28 U.S.C. § 2254(d), as amended by the AEDPA, a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim "resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct, rebuttable only by clear and convincing evidence. <u>Werts</u>, 228 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court has explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  With respect to "the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409.  As the Third Circuit has noted, "an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 411).

## III.   DISCUSSION

### A.   Ground One: Sufficiency of the Evidence

Petitioner argues that the evidence was insufficient to sustain his convictions for IDSI and indecent assault.  See Doc. 1 at 19 (Ground One).[6]  The District Attorney counters that both sufficiency claims are meritless.  See Doc. 8 at 26-32.  Petitioner raised

---

[6] All page citations are to the Court's ECF pagination.

15

his sufficiency claim in post-sentence motions and on direct appeal, and it is therefore exhausted.

Principles of due process dictate that a person can be convicted of a crime only if, "after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also In re Winship, 397 U.S. 358, 364 (1970); Sullivan v. Cuyler, 723 F.2d 1077, 1083-84 (3d Cir. 1983).  Accordingly, in reviewing challenges to the sufficiency of the evidence, a court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Sullivan, 723 F.2d at 1083-84 (quoting Jackson, 443 U.S. at 319) (emphasis in original).  Pennsylvania courts follow the same rule.  See Commonwealth v. Trill, 543 A.2d 1106, 1112 (Pa. Super. 1988) (verdict will be upheld if, "viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt") (quoting Commonwealth v. Griscavage, 517 A.2d 1256, 1257 (Pa. 1986)).

Moreover, the AEDPA has limited a habeas court's role in reviewing a claim that the evidence adduced at trial was insufficient to support a conviction.  Under 28 U.S.C. § 2254(d)(1), a writ of habeas corpus may be issued for evidentiary insufficiency only if the state courts have unreasonably applied either the Jackson "no rational trier of fact

16

standard," or the state equivalent of the <u>Jackson</u> standard.  <u>See</u> <u>Smith v. Vaughn</u>, No. 96-8482, 1997 WL 338851, at *7 (E.D. Pa. June 17, 1997).

Under Pennsylvania law, a person is guilty of IDSI with a child if he "engages in deviate sexual intercourse with a [victim] . . . who is less than 13 years of age."  18 Pa. C.S.A. § 3123(b).  "Deviate sexual intercourse" is defined to include  "[s]exual intercourse per os [mouth] or per anus between human beings." <u>Id.</u> § 3101; <u>see</u> <u>Commonwealth v. Andrulewicz</u>, 911 A.2d 162, 167 (Pa. Super. 2006).  The penetration required by the statute need only be "however slight." 18 Pa. C.S.A. §3101; <u>see</u>, <u>e.g.</u>, <u>Commonwealth v. Wilson</u>, 825 A.2d 710, 714 (Pa. Super. 2003) (victim testimony that defendant inserted his testicles into her mouth sufficient to establish intercourse by penetration however slight).

Also under Pennsylvania law, a person is guilty of indecent assault "if the person has indecent contact with the [victim], causes the [victim] to have indecent contact with the person or intentionally causes the [victim] to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the [victim] and . . . the [victim] is less than 13 years of age."  18 Pa. C.S.A. § 3126(a)(7).  "Indecent contact" is defined as: "Any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." <u>Id.</u> § 3101.

Regarding the sufficiency of Petitioner's IDSI and indecent assault convictions, the trial court stated as follows:

> Each of the required elements was proven at trial.  The seven (7) year-old victim, [L.W.], credibly and graphically testified that [Petitioner] had made her suck his toes

17

individually on multiple occasions, and then placed
something else in her mouth that went all the way "into the
back of [her] neck." She testified that it filled up her whole
mouth, that it was "skin," that it was "straight" and, based
upon her familiarity . . . with toes, she believed that it was
[Petitioner's] penis. That testimony alone would be sufficient
to convict [Petitioner] of the charges and was found to be
credible and truthful by the jury.

That testimony, however, was further reinforced by the
consistent testimony of numerous other witnesses. [L.W.'s]
stepsister, stepmother, aunt, school counselor, Children &
Youth caseworker, and the investigating Detective all
testified that [L.W.] related to them, albeit reluctantly in
many instances, the same consistent description of events that
led from body and head-rubbing to toe sucking and ultimately
[Petitioner's] placement of his penis into [L.W.'s] mouth.
Furthermore, Kim DeGroff, the Children & Youth
caseworker, testified that [L.W.] related . . . to her that "she
tasted something like blood." The jury could easily and
reasonably conclude from this description of events that
[Petitioner] did indeed place his penis in [L.W.'s] mouth, and
likely ejaculated, for the purpose of arousing or gratifying his
own sexual desire.

Trial Ct. Op. at 13-14. In addition, Judge Rubenstein stated the following when he

denied Petitioner's motion for a demurrer at the close of the Commonwealth's case:

We have a child witness who cannot specifically
identify that is was [Petitioner's] penis which penetrated her
mouth. The reason is because she contends she was
blindfolded and her eyes were covered. However, conceding
that, we can draw a clear inference, and the jury can as well,
that it was his penis, for the following reasons, which I will
place of record.

One, there was a history, as she testified, where
[Petitioner] asked her to "suck his toes." She had testified
that that happened on multiple occasions. There was
testimony that she had sucked each one individually
according to the record.

On none of those occasions did she testify that she was
blindfolded. However, on this occasion where she is made
not to see the object penetrating her mouth, and this is only on

18

> that singular occurrence, she testified it did not taste like feet.
> According to one witness, it was larger than his toes; it had
> penetrated deep into her throat; it was making a motion either
> in and out or up and down.
>
> Now, she didn't see it.  But we have to utilize common
> sense, reason, and experience.  I would suggest that while the
> issue is not crystal clear, there's certainly enough evidence
> for a reasonable person to infer that it was his penis . . . .

N.T. 01/30/07 at 251-53 (quoted in Trial Ct. Op. at 14-15).  The Superior Court similarly

rejected Petitioner's sufficiency claim on direct appeal, quoting the trial court's reasoning

noted above when it denied Petitioner's motion for demurrer.  See Super. Ct. Direct Op.

at 7-8.

The state courts' determination is neither contrary to, nor an unreasonable

application of, the sufficiency standard set forth by the Supreme Court in Jackson.  Under

Pennsylvania law, the uncorroborated testimony of the victim alone is sufficient to

sustain a jury's conviction beyond a reasonable doubt.  See Commonwealth v. Owens,

649 A.2d 129, 133 (Pa. Super. 1994) (child victim's testimony sufficient to support

indecent assault conviction despite defendant's contrary testimony and evidence raising

question about reliability of victim's testimony).  Furthermore, in Pennsylvania, prior

consistent statements of a child victim of sexual assault are admissible when they are

offered to corroborate in-court testimony.  See, e.g., Commonwealth v. Hunzer, 868 A.2d

498, 512 (Pa. Super. 2005).  Here, the trial court found the 8-year old victim competent to

testify, see N.T. 01/30/07 at 44-45, and her testimony that Petitioner sexually assaulted

her was credited by the jury.  A conviction based on such evidence does not offend due

process, and Petitioner has not cited to any cases supporting the opposite conclusion.

See, e.g., Zoomie v. Lamas, Civ. No. 12-0362, 2012 WL 4932014, at *7-8 (E.D. Pa. Aug. 29, 2012) (Caracappa, M.J), approved and adopted, 2012 WL 4932665 (Oct. 17, 2012) (Schiller, J.) (state court conclusion that child victim testimony is sufficient to support conviction in absence of physical evidence is not contrary to federal precedent); Lewis v. Gov't of V.I., 77 F. Supp.2d 681, 684 (D.V.I. App. Div. 1999), aff'd, 215 F.3d 1314 (3d Cir. 2000) ("uncorroborated testimony of the victim . . . is sufficient evidence for conviction."). In any event, as explained at length by the trial court, the victim's testimony was corroborated by no less than six other witnesses.

To the extent Petitioner argues that the uncertain date of the offense undermined the sufficiency of the evidence, such an argument fails. Under Pennsylvania law, the date of an assault upon a young child need not be established with precision, but is instead subject to a reasonable measure of flexibility. Commonwealth v. Groff, 548 A.2d 1237, 1241 (Pa. Super. 1988). Here, the evidence established a date of offense between September 2005 and December 2005 – a relatively short time-frame which does not undermine the sufficiency of the evidence. See Commonwealth v. Jette, 818 A.2d 533, 535 (Pa. Super. 2003) (evidence sufficient to sustain convictions where 8-year old victim testified to four assaults with only general description of month and time of year); Commonwealth v. Luktisch, 680 A.2d 877, 879-80 (Pa. Super. 1996) (evidence sufficient to sustain conviction where sexual abuse occurred in "the spring of 1985"). A finding of sufficiency by the state courts on this issue does not violate due process. See, e.g., Zoomie, 2012 WL 4932014 at *6 (no due process violation where testimony indicated rapes occurred "sometime after victim's fifteenth birthday" and "sometime in April").

Again, Petitioner offers no federal case law indicating that his due process rights were violated by a lack of a specific offense date.[7]

For these reasons, I conclude that after reviewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of IDSI and indecent assault beyond a reasonable doubt. Therefore, Petitioner is not entitled to relief on his sufficiency claim.

**B.**     **Grounds Two and Ten: Unreasonable and Excessive Sentence**

In Grounds Two and Ten, Petitioner challenges the discretionary aspects of his sentence, as well as the trial court judge's alleged abuse of that discretion and his alleged effort to hide that abuse from the state Sentencing Commission. See Doc. 1 at 22 (Ground Two) & 38 (Ground Ten). The District Attorney counters that these claims implicate matters of state law only and are therefore not cognizable in federal habeas, and that in any event the trial court did not abuse its discretion in sentencing Petitioner. See Doc. 8 at 32-34.

I agree with the District Attorney. In order to be eligible for habeas relief, a Petitioner must be "in custody in violation of the laws or treaties of the United States." 28 U.S.C. § 2254(a). Accordingly, a claim must be "cognizable" for purposes of federal

---

[7] In his rebuttal brief Petitioner focuses on the corroboration provided by his own statements to police, arguing that the absence of Miranda warnings should have prevented the jury from considering those statements. See Doc. 14 at 11-14. This argument is not relevant to Plaintiff's sufficiency claim. First, the sufficiency of the Commonwealth's evidence did not rest on any admission by Petitioner. Rather, the Commonwealth argued that certain of Petitioner's responses corroborated its case, and the Commonwealth's case was sufficient as discussed above without reference to Petitioner's statements. Second, Petitioner does not here, nor has he previously, raised any claim as to the admissibility of his statements under the Fifth Amendment.

habeas review, meaning such review is limited to determining whether a conviction violates federal law.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Thus, unless a deprivation of rights under state law rises to a federal due process violation, it is not cognizable on federal habeas review.

Furthermore, sentencing is considered "a matter of state criminal procedure, and does not fall within the purview of federal habeas corpus.'"  Johnson v. Beto, 383 F.2d 197, 198 (5th Cir. 1967) (quoting Wooten v. Bomar, 267 F.2d 900 (6th Cir. 1959)).  Absent an Eighth Amendment claim, the severity of a sentence imposed within the bounds of set by state law is not a proper ground for habeas corpus relief.  United States ex rel. Sluder v. Brantley, 454 F.2d 1266, 1269 (7th Cir. 1971); see also Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984) (an error in state court sentencing procedure is an independent state claim). [8]

Here, Petitioner challenged the discretionary aspects of his sentence on direct appeal solely on the basis of Pennsylvania law, namely Pennsylvania's Sentencing Code, Pennsylvania's Sentencing Guidelines, and Pennsylvania Rules of Appellate and Criminal Procedure, and he primarily relied on Pennsylvania case law.  Therefore, the

---

[8] Petitioner's sentence was within the maximum authorized for each count of conviction.  Under Pennsylvania law, Petitioner faced a maximum of 20 years' imprisonment for IDSI, a first-degree felony (see 18 Pa. C.S.A. §3123(a)(6)), a maximum of 10 years for false imprisonment,  a second-degree felony (see id. § 2903(a)), and a maximum of seven years for endangering the welfare of a child, a third-degree felony (see id. § 4304(a)).  See Commonwealth v. Kollock, CP-09-CR-0007646-2006, Docket; 18 Pa. C.S.A. § 1103.

Pennsylvania Superior Court correctly limited its discussion to state law.  See Super. Ct.

Direct Op. at 9-12.  In his rebuttal brief, Petitioner asserts that his challenge to the

discretionary aspects of his sentence also implicates due process and various

Constitutional violations, including the Eighth Amendment.  See Doc. 14 at 14-19.

However, the Superior Court's correct analysis of this claim as a state-law matter, and its

finding under state law found there was no error or abuse of discretion, see Super. Ct.

Direct Op. at 10-12, is authoritative and binding on federal court habeas review.  See

Bradshaw v. Richey, 546 U.S. 74, 76 (2005); Estelle, 502 U.S. at 67-68 (1991).

Accordingly, Petitioner's claims related to the discretionary aspect of his sentence are

non-cognizable.

In any event, Petitioner would not be entitled to relief on the merits.  As the

Superior Court explained, under Pennsylvania law where the sentencing guidelines

conflict with a mandatory minimum sentence, the guidelines are inapplicable.   Super. Ct.

Direct Op. at 10 (citing 42 Pa. C.S.A. § 9721(b)(1)).[9]   Here, Petitioner faced a mandatory

minimum sentence of 60 months for his involuntary deviate sexual intercourse

conviction, whereas under the guidelines Petitioner faced a 48-66 month sentence in the

standard range and a 60-78 month sentence in the aggravated range.  Super Ct. Direct Op.

at 10; N.T. 06/25/07 at 26.  As a result, the sentencing guidelines were not applicable to

Petitioner's involuntary deviate sexual intercourse conviction under state law.  Moreover,

in regards to Petitioner's other convictions, Pennsylvania's "sentencing guidelines are

merely advisory and a trial court may deviate from the guidelines id adequate explanation

---

[9] It appears the Superior Court intended to cite 42 Pa. C.S.A. § 9721(a.1).

23

for the deviation is placed in the record." Super. Ct. Direct Op. at 10 (citing

Commonwealth v. Mouzon, 828 A.2d 1126, 1128 (Pa. Super. 2003)). Petitioner

advances no argument that his sentence violates the Eighth Amendment other than his

assertion that it does.

In addressing this claim on direct appeal, the Superior Court noted the factors

considered by the trial court, including the age and credibility of the victim, Petitioner's

failure to accept responsibility at the sentencing hearing, the grooming of the victim, the

depravity of the criminal act and its impact on the victim, and the weighing of these

factors against Petitioner's character, lack of criminal records, and lack of drug and

alcohol abuse history. See Super. Ct. Direct Op. at 11-12 (quoting Trial Ct. Op. at 39-

43). Under the circumstances, it cannot be said that Petitioner's aggregate 13-to-27-year

sentence violated his constitutional rights. Therefore, Petitioner would not be entitled to

relief on the discretionary aspects of the sentence imposed.

### C.   **Ground Three: Recusal**

In Ground Three, Petitioner argues that Judge Rubenstein, who was both trial and

PCRA judge, abused his discretion in denying Petitioner's motion to recuse himself from

the PCRA proceedings. See Doc. 1 at 24. Respondents counter that this claim has been

exhausted only insofar as Petitioner raised it as a matter of state law and therefore it is not

cognizable or exhausted in federal habeas, and in the alternative that the judge's decision

not to recuse himself did not amount to a due process violation. See Doc. 8 at 34-37.

Petitioner raised this claim in his PCRA appeal by citing exclusively to state law,

and both the trial court and the Superior Court addressed the claim in that context. See

N.T. 02/25/11 at 6-8; Super. Ct. PCRA Op. at 14-17.  Similarly, Petitioner does not

invoke his due process rights in his federal habeas petition or memorandum.  See Doc. 1

at 24; Doc. 1-1 at 42-49.  Instead, Petitioner relies primarily on state law and vaguely

referred in his reply brief to "the Miscarriage which has accrued in the violation of the

Petitioner's Constitutional Right to a Fair and Impartial Judge."  Doc. 14 at 21.

Nevertheless, a review of the PCRA hearing transcript and Petitioner's brief to the

Pennsylvania Superior Court (the latter attached to the Response at Supplement Vol. IV)

shows that Petitioner clearly questioned the impartiality of Judge Rubenstein to conduct

PCRA proceedings.  Because "it is axiomatic that '[a] fair trial in a fair tribunal is a basic

requirement of due process,'" see Caperton v. A.T. Massey Coal Co., 556 U.S. 868

(2009), I conclude that Petitioner placed the state courts on notice of a federal due

process claim.   Therefore, I will reach the merits of the claim.[10]

      As noted, due process entitles a person to a fair tribunal, meaning an impartial

and disinterested tribunal.  Marshall v. Jerrico, 446 U.S. 238 (1980).  The due process

analysis requires an objective determination "not whether the judge is actually,

subjectively biased, but whether the average judge in his position is 'likely' to be neutral,

---

[10] Because the state courts did not reach the merits of Petitioner's due process
claim, the AEDPA's deferential standard of review does not apply.  Appel v. Horn, 250
F.3d 203, 210 (3d Cir, 2001) ("[W]hen, although properly preserved by the defendant, the
state court has not reached the merits of a claim thereafter presented to a federal habeas
court, the deferential standard provided by AEDPA . . . do not apply.").  Therefore, this
claim is reviewed using the de novo standard of review.  See Jacobs v. Horn, 395 F.3d
92, 100 (3d Cir. 2005) ("In cases where the AEDPA standards of review do not apply,
federal habeas courts apply pre-AEDPA standards of review.").

or whether there is an unconstitutional 'potential for bias.'" Caperton, 556 U.S. at 881

(quoting Ungar v. Sarafite, 376 U.S. 575, 584 (1964)).

Although the state courts addressed judicial bias as a matter of state law, the

Superior Court's analysis is instructive as to the due process claim as well:

> At the beginning of the PCRA hearing, [Petitioner]
> presented the court with a motion requesting that the PCRA
> court judge recuses himself.  Within the motion, [Petitioner]
> noted that the PCRA court judge also presided over
> [Petitioner's] trial and sentencing.  [Petitioner] argued that,
> during his sentencing hearing, the judge made statements that
> "set forth his [b]ias and [p]rejudice" towards [Petitioner].
> These allegedly prejudicial statements, [Petitioner] claimed,
> were: the declaration that the victim was "a target of
> [Petitioner's] sexual proclivities;" the declaration that
> [Petitioner] viewed the victim as "just a little tart" that he
> could "violate [] with impunity;" and, the declaration that
> [Petitioner] was "not an innocent man."  The PCRA court
> judge denied [Petitioner's] recusal motion from the bench
> and, within his later-filed opinion, the PCRA court explained
> that he was able to impartially consider [Petitioner's] PCRA
> petition.
>
> [Petitioner] now claims that the PCRA court erred in
> denying his recusal motion.  According to [Petitioner], the
> above statements reflected the PCRA court judge's "bias[]
> and lack of impartiality in the instant case so that [Petitioner]
> [was not] able to receive an impartial decision of [p]ost
> [c]onviction [r]elief."  Further, as "proof" of the PCRA
> court's bias, [Petitioner] notes that the PCRA court did not
> provide a contemporaneous opinion explaining "his reasons
> for denying the [PCRA petition]" and that the PCRA court's
> opinion "leaves out" certain facts that [Petitioner] believes are
> important.
>
> [Petitioner's] claim is meritless.  In this case, the
> PCRA court judge specifically determined that he could hear
> and dispose of [Petitioner's] PCRA petition "fairly and
> without prejudice."  As we have held, this decision is entitled
> to deference and "will not be overturned on appeal but for an
> abuse of discretion."  [*Commonwealth v.*] *Tedford*, 960 A.2d
> [1], 55-56 [(Pa. 2008)].  [Petitioner's] proof of bias in this

26

case – that the PCRA court failed to provide a
contemporaneous opinion with its order, that the PCRA court
opinion omitted certain facts, and that, at sentencing, the
court explained the reasons for its sentence – does not raise
any doubt whatsoever as to the judge's "ability to preside
impartially." *See id.* ("it is the burden of the party requesting
recusal to produce evidence establishing bias, prejudice or
unfairness which raises a substantial doubt as to the judge's
ability to preside impartially").

Moreover, we note that the statements [Petitioner]
claims constitute "proof of bias" were made by the sentencing
court and were proffered as justification for the court's
sentence.  [Petitioner] has completely failed to explain how –
in this case – the court's sentencing rationale raised any doubt
as to the court's ability to preside over [his] post-conviction
collateral proceedings.

Super. Ct. PCRA Op. at 15-17 (record citations omitted).

Petitioner is not entitled to habeas relief.  There is no objective evidence on the

record of any bias or prejudice on the part of Judge Rubenstein, who was both the trial

and PCRA judge, and in fact the judge reflected on whether he could rule on the PCRA

petition without prejudice and determined that he could.  As the Superior Court

explained, the comments which Petitioner identifies as proof of the judge's bias and

impartiality consist of statements the judge made at Petitioner's sentencing hearing, after

the jury had established the facts of the case and convicted Petitioner of sexually

assaulting his 7-year old stepdaughter.  Put another way, Petitioner is not entitled to a

presumption of innocence once the jury has rendered its verdict.

Were the court to accept Petitioner's argument that statements made at his

sentencing hearing constitute proof of judicial bias, the requirement that trial court judges

state the rationales for the sentences they impose would inevitably result in those

statements being used as proof of bias or impartiality at any subsequent collateral proceeding. The court will not entertain such a possibility, and therefore must look to the record of this case for objective evidence of bias or impartiality. Contrary to Petitioner's argument, a thorough review of the transcripts of Petitioner's trial, sentencing hearing and PCRA hearing, as well as Judge Rubenstein's opinions as trial judge and PCRA judge, demonstrate the judge's overall professionalism and impartiality. Therefore, Petitioner is not entitled to relief as to this claim.

### D.     Grounds Four Through Nine: Ineffective Assistance of Trial Counsel

Petitioner also raises six claims of ineffectiveness of counsel. Claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the United States Supreme Court set forth the standard for a petitioner seeking habeas relief on the grounds of ineffective assistance of counsel. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Id. at 687. Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 689. In determining prejudice, the

28

question is whether there is a reasonable probability that, absent the errors, the petitioner

would have prevailed on appeal. Smith v. Robbins, 528 U.S. 259, 284 (2000).

With these standards in mind, I will address the ineffectiveness claims seriatim.

### 1. Ground Four: Ineffectiveness for failing to investigate

Plaintiff argues that trial counsel was ineffective for failing to conduct a

meaningful independent investigation that would have uncovered alleged exculpatory

evidence proving Commonwealth witnesses committed perjury. See Doc. 1 at 26

(Ground Four). Petitioner raised this claim in his PCRA appeal and it is therefore

exhausted. Respondents argue that this claim is meritless. See Doc. 8 at 37-40.

In considering this claim on PCRA appeal, the Superior Court stated:

> First, [Petitioner] claims that his trial counsel was
> ineffective for "failing to conduct any meaningful
> independent pre-trial investigation." According to
> [Petitioner], had trial counsel performed this investigation,
> counsel would have learned that a non-testifying social
> worker – who was identified at trial as Dr. Bea VonWatzdorf
> – was not a doctor. [Petitioner's] claim has no merit.
> During trial, Bucks County Children and Youth
> Services caseworker Kim DeGroff testified that she initially
> interviewed the victim in this case. As Ms. DeGroff testified,
> during the interview, the victim told Ms. DeGroff that:
> [Petitioner] "made her suck his toes"; she "didn't know how
> many times [she had to suck Petitioner's toes] and she could
> not even guesstimate how many times"; and, one time,
> [Petitioner] "had her suck something else . . . [and s]he
> thought it was his penis" Ms. DeGroff testified that the
> victim did not know when, exactly, [Petitioner] had placed his
> penis inside of her mouth, but that the victim "thought that it
> was in the beginning of the school year of 2005." Further, the
> victim declared that – when [Petitioner] placed his penis
> inside of her mouth – [Petitioner] had "blindfolded her and
> handcuffed her . . . [and stood] in front of her on something."

As Ms. DeGroff testified, a couple of days later, she personally reinterviewed the victim and the victim "said the same thing[s] again."

At trial, Ms. DeGroff also testified that, two months after her own interviews, "[the vitim] was reinterviewed again by Dr. Bea Von[W]atzdorf, our forensic interviewer."  As Ms. DeGroff testified, during this third interview, the victim "said [Petitioner] was wearing . . . jean shorts when he placed his penis in her mouth" and "that the male private went into her mouth."

Now, [Petitioner] claims that trial counsel was ineffective for "failing to conduct any meaningful independent pre-trial investigation" and learn that Bea Von Watzdorf was not, in fact, a doctor.  According to [Petitioner], the honorific title improperly "bolster[ed] the credibility of the [] victim and the Commonwealth's case in the eyes of the jury."

Here, even assuming that trial counsel should have discovered that Ms. VonWatzdorf was not a doctor, [Petitioner] cannot demonstrate that counsel's actions caused him prejudice.  Ms. VonWatzdorf did not testify at trial and her interview with the victim – which was described by Kim DeGroff – elicited either trivial or repetitive facts about the abuse.  There is, thus, no "probability that the outcome of the challenged proceedings would have been different" if counsel had performed as [Petitioner] requested.

Super. Ct. PCRA Op. at 18-20 (record citations omitted).  Accordingly, the Superior Court denied Petitioner's ineffectiveness claim.

The state court's determination is neither contrary to, nor an unreasonable application of, Strickland.  Although Ms. DeGroff identified Ms. VonWatzdorf  as a "doctor," there is no accusation or evidence that Ms. VonWatzdorf was not, in fact, the Children and Youth Services' "forensic examiner," as Ms. DeGroff described her at trial, nor is there any challenge to the substantive material contained in Ms. VonWatzdorf's report.  As the Superior Court noted, Ms. VonWatzdorf's interview of the victim

provided only minor and repetitive facts about the abuse described by multiple witnesses, thus precluding a finding of prejudice in counsel's failure to discover that she was not a doctor.  Moreover, to the extent Petitioner argues that counsel's failure in this regard somehow violated his right under the Confrontation Clause, such a claim fails because Ms. VonWatzdorf did not testify at Petitioner's trial.  Therefore, I find that Petitioner is not entitled to relief as to this ineffectiveness claim.

### 2.  Ground Five: Ineffectiveness for failing to call witnesses

Plaintiff also argues that trial counsel was ineffective for failing to call witnesses, specifically Dr. Skolnick and the victim's uncle.  See Doc. 1 at 28 (Ground Five).  Respondents counter that this claim is unexhausted and procedurally defaulted as to Dr. Skolnick and meritless as to the victim's uncle.  See Doc. 8 at 40-44.

As for failing to call the victim's uncle as a witness, the PCRA court stated the following after conducting an evidentiary hearing:

> . . . [Petitioner] initially alleges that his trial counsel was ineffective for failing to pursue an inquiry into the allegation that the victim watched pornographic movies with her uncle. . . .  [Petitioner] appears to suggest that further inquiry into this matter would have revealed that it was the uncle, and not [Petitioner], who was the actual perpetrator of the sexual assaults upon the victim.
> In this instance, [Petitioner] is clearly "second guessing" his trial counsel's defense strategy. . . .
> At the [PCRA] hearing, Jack Fagan, Esquire, [Petitioner's] trial counsel, testified that because of [Petitioner's] insistence on his innocence, he developed a defense strategy that was designed to create reasonable doubt predicated in part upon the Commonwealth's decision not to call the uncle . . . as a witness.  Mr. Fagan recognized that [the uncle] would deny [Petitioner's] allegations and that [the uncle] was hostile to [Petitioner].  He therefore decided that a

31

> better trial strategy approach would be to permit the jurors to
> consider why the Commonwealth had not directly addressed
> the allegation that the uncle had showed pornographic videos
> to the victim.  This decision was designed to coalesce with
> the description of a domestic environment in which the victim
> had developed an alleged animosity toward [Petitioner]
> because of his rule as her disciplinarian.  Mr. Fagan clearly
> "had some reasonable basis designed to effectuate his client's
> interests" in deciding not to call [the uncle] as a witness.
>
> The authorities investigating this case were aware of
> the subject allegations against the uncle . . . .  They
> determined that those allegations were unfounded and
> irrelevant and chose not to pursue them.  Furthermore, those
> allegations do nothing to refute the overwhelming evidence
> admitted at trial, which was more than sufficient to convict
> [Petitioner] of the charges.

PCRA Ct. Op. at 16-17.  The Superior Court adopted the PCRA court's reasoning.

Super. Ct. PCRA Op. at 23-24.

The state court's determination is neither contrary to, nor an unreasonable

application of, Strickland.  Trial counsel explained his reasoning for not calling the

victim's uncle as a witness at trial during the PCRA court hearing, specifically that it

would be better for the jury to ponder why the Commonwealth did not directly address

the allegation against the uncle than it would be to call him as a hostile witness.  Such

reasonable trial strategies are entitled to a high degree of deference, see Strickland, 466

U.S. at 689, and should not be second-guessed simply because the jury found against

Petitioner.  See Roland v. Vaughn, 445 F.3d 671, 682 (3d Cir. 2006) ("Strickland and its

progeny make clear that counsel's choices will not be second-guessed by post-hoc

determinations that a different trial strategy would have fared better.").

As for failing to call Dr. Skolnick as a witness or failing to introduce his "evaluation" into evidence, Petitioner pursued this claim at his PCRA hearing.  See supra at 8.  However, the Superior Court found this claim to be waived on PCRA appeal because Petitioner failed to provide the court with any argument as to why Dr. Skolnick should have been called as a witness or how his testimony would have been favorable to Petitioner's case.  See Super. Ct. PCRA Op. at 20-21.  Respondents are correct that a party's failure to sufficiently develop arguments for purposes of meaningful appellate review can result in the Superior Court finding that the claim is waived.  See id. at 21 (citing Commonwealth v. Hardy, 918 A.2d 766, 771 (Pa. Super. 2007)).  But here, because the Superior Court's determination in this regard was not made pursuant to a state procedural rule that is strictly and regularly followed, I decline to find a procedural default of this claim.[11]  See Coleman, 501 at 750.  Rather, the Superior Court's determination that Petitioner waived this claim was based on the court's reading of Petitioner's appellate brief, in which the claim was raised but not sufficiently developed.  Because Petitioner asserted the identical claim in his petition to the PCRA court, which conducted a hearing on the claim and addressed it on the merits, and because Petitioner raised the claim on PCRA appeal and again in the present habeas petition, I will give

---

[11] For example, the waiver rule is firmly established in Pennsylvania for certain violations of state procedural rules.  See e.g., Commonwealth v. Paddy, 15 A.23d 431, 443 (Pa. 2011) ("An issue has been waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state post-conviction proceeding.") (citing 42 Pa.C.S.A. § 9544(b)); Supples v. Kerestes, 2010 WL 324431, *5 (W.D. Pa. Jan. 21, 2010) (state rule of waiver for failing to file an appeal or raise an issue is firmly established) (citing Sistrunk v. Vaughn, 96 F.3d 666, 671 n.4 (3d Cir. 1996)).

Petitioner the benefit of the doubt regarding exhaustion of this aspect of the claim and

address it on the merits.

Although the PCRA court's analysis is not owed any deference,[12] the court's

reasoning is instructive:

> [Petitioner] next alleges that his trial counsel was
> ineffective for failing to place into the trial record a
> "psychological evaluation" completed by Dr. Jay Skolnick
> that portrayed [Petitioner] favorably.
> The last paragraph of Dr. Skolnick's evaluation states
> that "[Petitioner] is a decent, law-abiding man whose life was
> turned upside down due to these allegations," and requests "a
> doctoral level psychologist who is specifically trained in
> forensic evaluations (sic) examine [L.W.] (the victim) and
> interview all parties in hopes to deciphering this case."  While
> this "evaluation" offers a statement concerning [Petitioner's]
> state of mind, [Petitioner] has not demonstrated how it dispels
> or refutes any of the evidence against him or proves his
> innocence.
> . . . . [Petitioner's] trial counsel, Jack Fagan, testified
> at the [PCRA] hearing that he did not offer Dr. Skolnick's
> "evaluation" into evidence because it was simply a recitation
> of [Petitioner's] expressions of his emotional disturbance and
> denials of the allegations against him.  In Mr. Fagan's
> opinion, Dr. Skolnick's "evaluation" did not address the
> evidence in any fashion, and [Petitioner] has failed to explain
> how the introduction of this evidence would have "offered a
> potential for success *substantially greater* than the tactics
> actually utilized."  Therefore, his claim is without merit.

PCRA Ct. Op. at 18 (emphasis in original).

Petitioner is not entitled to relief under Strickland.  Trial counsel explained his

reasoning for not introducing Dr. Skolnick's evaluation at trial, in particular the fact that

---

[12] See Thomas v. Horn, 570 F.3d 105 (3d Cir. 2009) (if state trial court addresses
issue on merits but state appellate court finds issue waived under state law, federal habeas
court conducts de novo review).

the evaluation merely recited Petitioner's emotional responses to allegations which the jury already knew were denied, and that it did not address the reliability of the trial evidence.  Instead, Petitioner testified in his own behalf and the defense called several character witnesses, in an effort to convince the jury of Petitioner's good moral character and innocence.  The fact that the jury's credibility determination went in favor of the victim and not Petitioner does not render counsel's strategy or performance deficient. Moreover, given the quantity and quality of the evidence against Petitioner, Dr. Skolnick's assessment that Petitioner "is a decent, law-abiding man whose life was turned upside down due to these allegations," without more, is insufficient to satisfy the prejudice prong of Strickland.  See Smith, 528 U.S. at 284 (2000) (prejudice prong turns on "whether there is a reasonable probability that, absent the errors, the petitioner would have prevailed").

 For these reasons, I find Petitioner is not entitled to relief on the merits of this ineffectiveness claim under either the deferential AEDPA standard of review, or under the pre-AEDPA de novo standard of review.

### 3.  Ground Six: Ineffectiveness for failing to object to inconsistent statements

Plaintiff also argues that trial counsel was ineffective for failing to object to inconsistent statements made by Commonwealth witnesses who were allegedly coached. See Doc. 1 at 29 (Ground Six).  Respondents counter that this claim is unexhausted and procedurally defaulted.  See Doc. 8 at 44-46.

In addressing this claim on PCRA appeal, the Superior Court stated:

> . . . . In this case, the PCRA Court ordered [Petitioner]
> to file a concise statement of errors complained of on appeal,
> pursuant to Pennsylvania Rule of Appellate Procedure
> 1925(b). Within [Petitioner's] Rule 1925(b) statement,
> [Petitioner] raised numerous vague claims, including claims
> that trial counsel was ineffective for: "failing to
> object/preserve inconsistent testimony made by the
> Commonwealth's [w]itnesses;" "allowing the Commonwealth
> [w]itnesses to be [c]oached by others in the [c]ourtroom as to
> what answers to give[,] resulting in a '[t]ainted [h]earing' due
> to said coaching;" "failing to object to the Commonwealth's
> vouching of the [c]redibility of the Commonwealth's
> [w]itnesses during closing arguments;" "failing to object to
> [hearsay testimony] by Commonwealth [w]itnesses;" and,
> "failing to object to the knowingly withholding of
> information relating to the search warrant."
>
> A review of each of the above claims demonstrates
> that [Petitioner] completely failed to specify which
> "Commonwealth [w]itness[]" were the subject of his
> ineffective assistance of trial counsel claims. Further,
> [Petitioner] gave the PCRA court no guidance as to: what
> "inconsistent testimony" required
> "object[ion]/preserv[ation]"; when the alleged "coaching"
> occurred; how the Commonwealth "vouched" for the
> credibility of unspecified witnesses; what "hearsay
> testimony" was improperly admitted; or what information the
> Commonwealth "knowingly withheld." Moreover, due to the
> vague nature of [Petitioner's] concise statement, the PCRA
> court did not respond to the above five claims of
> ineffectiveness.
>
> As we have previously held, "a [c]oncise [s]tatement
> which is too vague to allow the court to identify the issues
> raised on appeal is the functional equivalent of no [c]oncise
> [s]tatement at all." ***Commonwealth v. Lemon***, 804 A.2d 34,
> 37 (Pa. Super. 2002), *quoting* ***Commonwealth v. Dowling***,
> 778 A.2d 683, 686 (Pa. Super. 2001). Because [Petitioner]
> has failed to preserve the above five ineffectiveness claims by
> clearly identifying and articulating them in a concise
> statement, [Petitioner] has waived [these] issues . . . on
> appeal. ***Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa.

> 1998) ("[a]ny issues not raised in a 1925(b) statement [are] deemed waived").

Super. Ct. PCRA Op. at 12-14 (record citations omitted).

This discussion reveals that the Superior Court found this claim waived because Petitioner violated Rule of Appellate Procedure 1925(b), which distinguishes this waiver from the discretionary waiver discussed above.  See supra at 33. Because the state court's determination of this claim relied on a state procedural rule separate from the constitutional issue, the claim is defaulted.  See Maples, 132 S. Ct. at 922; Buck v. Colleran, 115 Fed. Appx. 526, 528 (3d Cir. 2004) (waiver of claims for failure to present claim in Rule 1925 statement is independent and adequate to support procedural default).

Because the claim is defaulted, the federal court will consider the merits of the claim only if Petitioner can establish cause and prejudice for the default or that a failure to consider the claim will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 750.  Petitioner has not claimed that any factor external to the defense precluded him from raising and/or litigating this claim, nor is any factor discernable.  Nor can he allege ineffectiveness of PCRA counsel as cause, because he elected to act pro se. Petitioner filed an amended PCRA petition, with supplementation, after the PCRA court granted appointed counsel's motion to withdraw, and Petitioner filed a pro se PCRA appeal.  Therefore, the Supreme Court's recent decision allowing certain petitions to meet the cause requirement by establishing ineffectiveness of collateral appeal counsel does not apply.  See Martinez v. Ryan, ___ U.S. ___, 132 S.Ct. 1309, 1315 (2012) ("Inadequate assistance of counsel at initial-review collateral proceedings may establish

cause for a prisoner's procedural default of a claim of ineffective assistance at trial."). Also, Plaintiff has failed to demonstrate a fundamental miscarriage of justice, which requires a showing that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup, 513 U.S. at 327. Although Petitioner identifies multiple witnesses and argues at length how the testimony of these witnesses was inconsistent or coached, see Doc. 1-1 at 57-77, none of this evidence points to Petitioner's innocence. Therefore, this ineffectiveness claim is procedurally defaulted.[13]

### 4. Ground Seven: Ineffectiveness for failing to object to Commonwealth's closing argument

Plaintiff also argues that trial counsel was ineffective for failing to object to the Commonwealth's vouching for the credibility of its witnesses during closing argument. See Doc. 1 at 34 (Ground Seven). Respondents counter that this claim is unexhausted and procedurally defaulted, and is in any event meritless. See Doc. 8 at 46-48.

Petitioner raised this claim in his PCRA appeal, but the claim was not addressed by the PCRA court and was deemed waived by the Superior Court for the identical reason as the previous ineffectiveness claim, namely for Petitioner's failure to abide by Rule of Appellate Procedure 1925(b). See Super. Ct. PCRA Op. at 13-14. As previously

---

[13] Even were I to reach the merits of this claim, I would not recommend granting relief. A review of the trial transcript establishes that trial counsel challenged the victim's credibility and effectively cross-examined each Commonwealth witness, and the record is devoid of evidence regarding witness "coaching." To the extent there may have been conflicts in the witness testimony, such matters go to witness credibility which is the sole province of the fact-finder. See Marshall v. Lonberger, 459 U.S. 422, 434 (1983) (section 2254 "gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor was observed by the state trial court, but not by them.").

discussed, a state court's determination of waiver for failure to present a claim in the Rule

1925 statement of errors complained of on appeal statement is independent and adequate

to support procedural default.  See Buck, 115 Fed. Appx. at 528.  Also as previously

discussed, Petitioner has failed to establish cause to excuse the default, or that the failure

to consider the claim will result in a fundamental miscarriage of justice.  Therefore, this

claim is procedurally defaulted.[14]

### 5.  Ground Eight: Ineffectiveness for failing to disclose a pre-sentence investigation

Plaintiff also argues that trial counsel was ineffective for failing to provide him

with the pre-sentence investigation report, resulting in a violation of his due process

rights.  See Doc. 1 at 35 (Ground Eight).  Petitioner raised and exhausted this claim on

PCRA appeal.  Respondents counter that this claim is meritless.  See Doc. 8 at 48-51.

In addressing this claim on PCRA appeal, the PCRA court stated as follows:

> [Petitioner] also alleges that he was unable to review
> the presentencing investigation report in order "to contest
> anything that was not correct."  [Petitioner] again does not
> explain how he was prejudiced by his alleged failure to
> review his presentence investigation report and how this so
> undermined the truth-determining process.

---

[14] Even were I to reach the merits of this claim, I would not recommend granting
relief.  A review of the trial transcript establishes that trial counsel challenged the
credibility of the victim during his closing argument, arguing that she fabricated the
sexual assault by Petitioner because he was the primary disciplinarian in the family – in
other words, that the Commonwealth's case consisted of unsupported allegations made
by an angry child.  See N.T. 01/31/07 at 97-146.  In response, the Commonwealth relied
during closing on the victim's own testimony, the testimony of other Commonwealth
witnesses, and inferences that can be reasonably derived therefrom, to persuade the jury
that the victim's testimony was reliable.  See id. at 146-184.  It was not improper under
the circumstances for the prosecutor to address the witnesses' credibility during closing.

> While this Court is cognizant that "[d]ue process
> demands that a defendant be sentenced on the basis of
> accurate information, [United States] v. Taylor, [C.A. No. 90-
> 1711,] 1990 WL 121335 (E.D. Pa. Aug. 14, 1990), it has also
> been observed that "[f]or a due process violation to occur,
> however, the sentencing judge must have relied upon the
> allegedly false information that is being challenged." Id.
> . . . [W]hen [Petitioner] asked his trial counsel, Jack
> Fagan, at the [PCRA] hearing why he "was not given the
> opportunity to review the presentencing investigation report
> and permitted the opportunity to contest anything that was not
> correct," Mr. Fagan replied that "typically, it's the lawyer's
> job to review it [and] that's what I did." There is no
> allegation that there was any erroneous information in the
> presentence investigation report, or that [Petitioner's] due
> process rights were violated.
>
> Since [Petitioner] has failed to identify with any
> particularity what false information this Court allegedly relied
> upon in imposing his sentence, this complaint is simply one
> more attempt to relitigate the issue of the propriety of his
> sentence. . . .

PCRA Ct. Op. at 19-20.  The Superior Court affirmed, noting that because Petitioner did

not identify any errors or inaccuracies in the pre-sentence investigation, he could not

demonstrate how counsel's alleged failings caused him prejudice.   Super. Ct. PCRA Op.

at 21.

The state court's determination is neither contrary to, nor an unreasonable

application of, Strickland.  As he did on PCRA appeal, Petitioner raises this claim

without explaining in what ways the presentence investigation report was erroneous or

inaccurate.  See Doc. 1 at 35 (Ground Eight); Doc. 1-1 at 82-83.  Under the

circumstances, therefore, Petitioner cannot show that counsel acted deficiently in failing

to show him the report, nor can he show how the failure to show him the report caused

him any prejudice.

To the extent Petitioner argues that counsel's failure to provide him with the pre-sentence investigation report violated the Freedom of Information Act, see Doc. 1-1 at 83, such a claim fails because the Act applies to federal, not state, agencies.  See 5 U.S.C. § 552.  In addition, under Pennsylvania law, a pre-sentence report is not a public record, see 42 Pa. C.S.A. § 9733, and although it shall be made available to the court to assist in sentencing and to defense counsel as a person "having a legitimate professional interest in the information," it is not statutorily made available to defendants.  Id. § 9733(1)-(3).  Therefore, Petitioner is not entitled to relief as to this ineffectiveness claim.

### 6.   Ground Nine: Ineffectiveness for failing to object to the sentence

Lastly, Plaintiff argues that trial counsel was ineffective for failing to object to Petitioner's sentence because (1) the trial court "double counted" factors already calculated into the Pennsylvania Sentencing Guidelines, (2) the trial court imposed a sentence based on factors that were not criminal and on Petitioner's assertion of innocence, and (3) the trial court failed to admit the results of Petitioner's privately obtained polygraph.  See Doc. 1 at 37 (Ground Nine).  Respondents counter that this claim is procedurally defaulted and in any event meritless.  See Doc. 8 at 51-54.

As to ineffectiveness for not challenging the sentencing court's alleged "double counting" of factors already calculated into the Pennsylvania Sentencing Guidelines, that aspect of the claim is procedurally defaulted.  Petitioner raised the claim on PCRA appeal, but the Superior Court found the claim waived because Petitioner failed to develop the claim by identifying which sentencing factor was implicated.  See Super. Ct. PCRA Op. at 25.  Unlike Petitioner's claim that counsel was ineffective for failing to call

Dr. Skolnick as a witness, which the Superior Court also found to be waived, see supra at 33, Petitioner did not pursue his "double counting" ineffectiveness claim at his PCRA hearing.  See supra at 8.  Therefore, no state court has reached the merits of this claim. Therefore, unlike the claim as to Dr. Skolnick, I will not give Petitioner the benefit of the doubt regarding exhaustion of this aspect of the claim.  Petitioner does not set forth any cause and prejudice to excuse the default or that the failure to consider this claim would amount to a fundamental miscarriage of justice.  In any event, he again fails to identify which sentencing factors were allegedly "double counted."  See Doc. 1 at 38 (Ground Ten); Doc. 1-1 at 84; Doc. 14 at 46-47.

As to ineffectiveness for not challenging a sentence imposed based on non-criminal factors and Petitioner's assertion of innocence, the Superior Court rejected that aspect of the claim on PCRA appeal:

> Next, [Petitioner] claims that trial counsel was ineffective for "failing to object to the [trial court's] discretionary aspects as to the unreasonableness of the sentence handed down at the [s]entencing [h]earing of [June 25, 2007]."  According to [Petitioner], the sentencing court . . . imposed a sentence "based on alleged events that by [the court's] own admission were ['not a crime']."
> . . . . [Petitioner's] . . . claim . . . that the court increased his sentence for events that were "not a crime" [] fails as it is meritless.  As [Petitioner] notes, at sentencing the court remarked:
>> [The victim] testified that she had to suck your toes one by one.  Sort of inappropriate, one would think, but, again, not a crime, but you've stepped it up.  She had to do that not on one occasion, but on multiple occasions.  So if we say that this incident is a one-time occurrence, we would be neglecting and ignoring the truth about what occurred.  While the oral sex with

42

the child may have occurred only one time, you were hell bent on a course to make her your sexual victim because you were in a position of power and authority over her, and you believed that she, given her size and her age, and your position of control, would, in all likelihood, either not object or not tell anybody.  To her credit, however, she did.

[N.T. 06/25/07 at 37-38.]

[Petitioner] claims that the above statement proves the sentencing court "impos[ed] a sentence based on alleged events (the sucking of his toes) that . . . were ['not a crime']" – and that trial counsel was ineffective for failing to challenge the discretionary aspects of [Petitioner's] sentence.  This claim has no arguable merit.

As the Sentencing Code provides: "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. §9721(b).  In this case, the sentencing court noted that [Petitioner] had groomed his victim for sexual abuse by requiring that she repeatedly suck his toes.  This conduct is clearly relevant to the sentencing determination, given that it demonstrates [Petitioner's] calculated, long-term strategy for grooming his victim, [Petitioner's] danger to the community, and the heightened damage and pain [Petitioner] inflicted upon the young victim.

Super. Ct. PCRA Op. at 25-26 (citations to Appellant's Br. omitted).  Accordingly, the

Superior Court found that Petitioner's ineffectiveness claim had no arguable merit.  Id. at

26.

The state court's determination is neither contrary to, nor an unreasonable

application of, Strickland.  As on PCRA appeal, Petitioner argues in this habeas appeal

that counsel was ineffective for failing to object when the trial judge considered the

repeated instances of toe sucking in rendering his sentence, even though the judge stated

43

that toe sucking was "not a crime."  N.T. 06/25/07 at 37.  However, Petitioner again fails

to appreciate that while oral sex may have occurred on only one occasion, the state court

reasonably considered Petitioner's prior physical contact with the 7-year old victim and

how that contact set the stage for the offense as well as the impact on the victim, all

matters that were highly relevant for purposes of sentencing.  Moreover, as discussed

supra in Parts IIIA and IIIB, sufficient evidence supports Petitioner's convictions and

there is no merit to his claim that the trial court abused its discretion in imposing his

sentence.  Because there is no merit to the underlying substantive claims regarding his

sentence, trial counsel cannot be found deficient for failing to object to the sentence

imposed.

 As to ineffectiveness for not challenging the trial court's refusal to admit

Petitioner's polygraph into evidence, that aspect of the claim is unexhausted and

procedurally defaulted.  Petitioner raised this claim on direct appeal as a substantive

claim of trial court error and/or abuse of discretion, but did not do so in the context of

ineffective assistance of counsel.  Therefore, this aspect of the claim is unexhausted.  See

Landono v. Rafferty, 897 F.2d 661, 669 (3d Cir. 1990) (exhaustion requires petitioner to

present state courts with same factual and legal theory).  Because the time for filing a

timely second PCRA petition has passed, exhaustion is excused as futile and the claim is

procedurally defaulted.  As with his other defaulted claims, Petitioner does not set forth

any cause and prejudice to excuse the default or that the failure to consider this claim

would amount to a fundamental miscarriage of justice.  Accordingly, I do not reach the merits of this claim.[15]

For all of the aforementioned reasons, Petitioner is not entitled to relief as to this ineffectiveness claim.

## IV.  <u>CONCLUSION</u>

Petitioner's habeas petition is timely.  Ground One (challenging the sufficiency of the evidence), Grounds Two and Ten (challenging the reasonableness of the sentence) and Ground Three (challenging the PCRA judge's refusal to recuse) are exhausted but meritless.  Ground Four through Ground Nine are all ineffectiveness of trial counsel claims which and are either exhausted but without merit, or unexhausted and procedurally defaulted.  Therefore, Petitioner is not entitled to habeas relief.

---

[15] In any event, Petitioner is not entitled to relief.  As the Superior Court explained in addressing the underlying substantive claim on direct appeal, it is well-settled law in Pennsylvania that "[d]ue to the well-known unreliability of the [polygraph] tests, our courts uniformly have been 'reluctant to permit any reference to a polygraph examination to be made before the finder of fact.'"  Super. Ct. Direct Op. at 3 (quoting <u>Commonwealth v. Hetzel</u>, 822 A.2d 747, 767 (Pa. Super. 2003)).  Because the trial court properly did not admit the polygraph results into evidence, counsel cannot be found deficient for failing to object to the court's decision.

Accordingly, I make the following:

## **R E C O M M E N D A T I O N**

AND NOW, this  23rd      day of January 2014, IT IS RESPECTFULLY

RECOMMENDED that the petition for writ of habeas corpus be denied.  There has been

no substantial showing of the denial of a constitutional right requiring the issuance of a

certificate of appealability.  Petitioner may file objections to this Report and

Recommendation.  See Local Civ. Rule 72.1.  Failure to file timely objections may

constitute a waiver of any appellate rights.

/s/ELIZABETH T. HEY
_____
ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE